**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEON MARCELL GOLDSMITH,<br><br>Defendant. | No. 17-CR-2051-LRR<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

This matter comes before me on defendant's motion to suppress evidence allegedly obtained in violation of the Fourth and Fifth Amendments to the United States Constitution. (Doc. 123). A grand jury indicted defendant, charging him with two counts of distributing cocaine base in violation of Title 21, United States Code, Section 841(a)(1), and one count of conspiring to distribute cocaine base in violation of Title 21, United States Code, Section 846. (Doc. 8). These charges arose in part from evidence gathered during a traffic stop on October 2, 2015, as well as a confidential informant's statements following a controlled buy of cocaine base on April 19, 2016. Defendant argues that police lacked reasonable suspicion to stop the vehicle in which he was riding on October 2, 2015. Defendant further argues that police used impermissibly suggestive techniques to secure an identifying statement from the confidential informant on April 19, 2016, resulting in a substantial likelihood of irreparable misidentification. The government timely filed its resistance to the motion. (Doc. 131).

The Honorable Linda R. Reade, United States District Judge, referred this motion to me for a Report and Recommendation. On November 8, 2017, I held an evidentiary

hearing on the motion. The government called Waterloo Police Department officers Joseph Zubak and Rich Gehrke, and Federal Bureau of Investigation Special Agent Benjamin Carter. Defendant's mother, Michelle Goldsmith, testified for defendant. I admitted Government's Exhibit 1 into evidence. (Doc. 133). Defendant requested the record be left open so that he could subsequently offer Defendant's Exhibits A through D, which were received on November 13, 2017. (Doc. 134). Having considered the parties' filings, as well as all argument and evidence offered at and after the hearing, I respectfully recommend that the Court deny defendant's motion to suppress for the reasons set forth below.

## *I. FINDINGS OF FACT*

Beginning at least as early as 2015, law enforcement officers from the Waterloo Police Department and Federal Bureau of Investigation began investigating a group of individuals suspected to be involved in trafficking cocaine base in Waterloo, Iowa. During the course of the investigation, police used confidential informants ("CIs") to conduct controlled buys of cocaine base from a supplier later identified as Keylynn Goldsmith. Officers discovered that other individuals would oftentimes be sent to conduct the transactions CIs had arranged with this supplier.

On October 2, 2015, officers used a CI to arrange a controlled buy of cocaine base from Keylynn Goldsmith. Officers monitored an address associated with Keylynn Goldsmith then observed a vehicle described as a maroon Bravada make a brief stop at the address. The Bravada proceeded directly to the parking lot of a Waterloo business that had been designated as the location of the controlled buy. There, the CI approached the driver and successfully purchased an amount of cocaine base, which the CI delivered to undercover officers shortly thereafter. Testimony is unclear as to whether officers could see the occupants of the vehicle during the execution of the drug buy. However, Officer Zubak and Officer Gehrke both testified that initial descriptions of the driver and

passengers were relayed to surveilling officers either during or shortly after the controlled buy. Officers described the driver of the vehicle as a black male wearing a white t-shirt. The vehicle also contained four passengers, who were described as a black male wearing a black t-shirt, a black male wearing a yellow t-shirt, and two females.

When the Bravada left the location of the controlled buy, Officer Zubak, Officer Gehrke, and others followed in unmarked cars. Although the officers rotated positions and pursued the Bravada from various distances in order to avoid detection, Officer Zubak testified that officers would have kept the vehicle within sight at all times. The Bravada proceeded to a nearby bus station, where it dropped off the two female passengers. It then made brief stops at two other business locations before arriving at Crossroads Mall in Waterloo, Iowa. Three black males wearing a white t-shirt, a black t-shirt, and a yellow t-shirt stepped out of the Bravada and entered the mall. Officer Gehrke and another officer followed them inside. The suspects spent an uncertain amount of time in a cell phone store. Officer Gehrke then watched as they left the store, lingered in the corridor, and then exited the mall.[1] He alerted officers waiting outside, who watched as three suspects matching the descriptions provided by Officer Gehrke re-entered the Bravada and drove away from the mall. Once again, police followed in unmarked vehicles.

At this point, Officer Zubak requested that a uniformed officer make a traffic stop of the Bravada for the purpose of identifying the three men. At approximately 5:22 p.m.,

[1] Defendant's Exhibits A through D consists of four photographs of the entrances to the cell phone store where the three men spent time during their stop at Crossroads Mall. Officer Gehrke testified that he recalled only one entrance to the phone store inside the mall, but the photographs show an entrance inside the mall and another entrance directly outside the mall. I do not find this to be material, as Officer Gehrke testified that when he entered the mall he saw all three suspects in the store, then he watched the phone store and alerted other officers when the three left the store. The number of entrances is not material to the question of whether Officer Gehrke saw the men in the store and leave the store.

Officer John Koontz of the Waterloo Police Department arrived in his marked patrol vehicle and conducted a traffic stop of a maroon Bravada matching the license plate number of the vehicle undercover officers had followed from Crossroads Mall. Officer Koontz did not observe the vehicle to commit a traffic violation. Rather, the parties agree that the sole purpose of the stop was to obtain the identifications requested by Officer Zubak. During the stop, Officer Koontz identified the Bravada's occupants as Keywann Goldsmith, Antonio King, and defendant. Defendant was wearing a white t-shirt, and was sitting in a rear passenger seat. Prior to the stop, police did not know the identity of any of the three men whom they had followed from the controlled buy. No evidence beyond these identifications was obtained during the traffic stop.[2]

On April 19, 2016, police used a different CI to arrange another controlled buy from a supplier later identified as Keylynn Goldsmith. At approximately 7:00 p.m., surveilling law enforcement officials, including Officer Zubak and Special Agent Carter, observed a silver vehicle arrive at the location designated for the controlled buy. The vehicle picked up the CI and proceeded to circle the block. During this time, the CI successfully purchased an amount of cocaine base from the driver.

Shortly after being dropped off by the silver vehicle, the CI met with Officer Zubak and Special Agent Carter to turn over the drugs he or she had purchased and to be debriefed by the officers. The CI told Officer Zubak that the person who had just delivered the cocaine base was not the person known to the CI as Keylynn Goldsmith. Officer Zubak then handed the CI a set of six photographs depicting individuals suspected of drug involvement in connection to Keylynn Goldsmith. These photographs consisted of booking photos obtained from Blackhawk County Jail records, as well as driver's

[2] Importantly, defendant did not claim in his motion or during the hearing that any other evidence was derived from this identification that he believes should be suppressed in the event the Court finds this stop to be unconstitutional.

license identification photos acquired through the Iowa Department of Transportation. Officer Zubak included in the collection a booking photo of defendant taken on January 29, 2014, following an arrest in Blackhawk County. Each photograph contained the image of one individual.[3] The CI flipped through the photographs, indicating that he or she was familiar with many of the individuals depicted and describing their involvement with the drug trade. When the CI located the photo of defendant, the CI told the officers that the person in the photo was the same person who had just delivered the cocaine base. The officers did not recall the CI identifying defendant by name on this occasion. However, sometime later the CI told officers that he or she had known defendant since about 2010 and had received multiple drug deliveries from defendant. Officer Zubak testified that up to twenty transactions may have occurred between defendant and the CI, although he could not remember the exact number.

## *II. ANALYSIS*

Defendant raises two claims for suppression based on two separate constitutional grounds. One alleges that the October 2, 2015, traffic stop violated the Fourth Amendment's protection against unreasonable seizures because officers lacked reasonable suspicion to stop the vehicle. The other alleges that police elicited the CI's identifying statement on April 19, 2016, through an improperly suggestive procedure that violated defendant's Fifth Amendment right to due process. I address these claims in turn.

---

[3] Government's Exhibit 1 is a collection of photographs modelling the set of photos Officer Zubak provided to the CI. Officer Zubak modified the original collection of photos throughout the course of the investigation, and the original no longer exists in relevant form. The government concedes that not all of the photographs in Exhibit 1 are identical to those in the possession of Officer Zubak on April 19, 2016. However, the exhibit depicts the same six individuals whose photos were provided to the CI. Additionally, after making a phone call confirming his recollection during a recess in the hearing, Officer Zubak testified that the photograph of defendant included in government's Exhibit 1 is in fact the photo shown to the CI on April 19, 2016. (Doc. 133, at 2).

### *A. The Traffic Stop*

Defendant argues that Officer Koontz lacked reasonable suspicion to conduct a traffic stop of the Bravada in which defendant was riding on October 2, 2015. Specifically, even if police had reasonable suspicion to stop defendant's vehicle immediately following their observations of the controlled buy at 2:48 p.m., defendant contends that reasonable suspicion no longer existed at 5:22 p.m., as none of the individuals responsible for the drug transaction may have remained in the vehicle by that time. Defendant therefore seeks to suppress any testimony or other proof as to Officer Koontz's identification of defendant as a passenger in the vehicle.

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. "A traffic stop constitutes a seizure of a vehicle's occupants, including any passengers." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012) (alterations omitted) (quoting *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009)). However, "[i]f reasonable suspicion exists, officers may briefly detain a vehicle and its occupants to conduct a reasonable investigation" into the criminal activity thought to be afoot. *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012) (citing *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001)). Whether or not reasonable suspicion existed at the time of an investigatory traffic stop is an objective inquiry based on the totality of the circumstances known to officers at the time of the stop. *See* (*id.*); *United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009). Officers must be aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014).

In this case, police officers arranged a controlled buy of cocaine base with a supplier known to send other individuals to deliver the drugs. They observed a maroon

Bravada as it proceeded directly from an address associated with the drug supplier to the designated location of the controlled buy. There, the CI successfully purchased an amount of cocaine base from an individual in the vehicle. Reasonable suspicion generally exists to support an investigatory traffic stop when police observe a vehicle delivering drugs to the location of a controlled buy. *See, e.g.*, *United States v. Bachman*, 136 F.App'x 955, 956 (8th Cir. 2005) (unpublished); *Zamora-Lopez*, 685 F.3d at 790. In *Zamora-Lopez*, the Eighth Circuit Court of Appeals held that reasonable suspicion supported the investigatory stop of a vehicle officers had observed delivering a suspected drug trafficker to the location of a controlled buy, even though a drug transaction had not yet occurred and the officers did not know the identity of the driver. 685 F.3d at 790 (noting that officers were aware of a consistent pattern by which the drug trafficker under investigation would be dropped off at the location of a deal and later picked up by the same driver). Here, officers not only observed the maroon Bravada depart the supplier's address and arrive at the designated location as expected, but they also watched as the CI successfully purchased cocaine base. Based on these facts, reasonable suspicion to stop the Bravada to investigate the identities of its occupants existed at the time officers followed the vehicle from the parking lot where the buy occurred.

Nevertheless, defendant argues reasonable suspicion had dissipated by the time Officer Koontz stopped the Bravada at 5:22 p.m. due to the possibility that different persons matching the descriptions of the suspects observed at the controlled buy may have entered the vehicle unbeknownst to surveilling officers. It is true that reasonable suspicion must exist when a traffic stop occurs, and that facts giving rise to reasonable suspicion may grow stale with the passage of time. However, in the Fourth Amendment context, "[t]here is no bright-line test for determining when information is stale." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (quoting *United States v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996)) (finding that probable cause to search a defendant's

home still existed over two weeks after a confidential informant made the last of multiple controlled purchases of methamphetamine at the house). "Time factors must be examined in the context of a specific case and the nature of the crime under investigation." (*Id.*).

In this case, only two and a half hours passed between the confirmed drug transaction and Officer Koontz's traffic stop. Throughout this time period, law enforcement officers maintained surveillance of the vehicle and its occupants. Officer Zubak testified that, after the controlled buy, police kept close watch over the Bravada as it proceeded from stop to stop, eventually arriving at Crossroads Mall. There, its three occupants were observed by Officer Gehrke as they entered the mall, visited a cell phone store, lingered in a hallway, and left the building. Other officers watched three men board the Bravada and then followed the vehicle until the time of the traffic stop. Throughout the course of these events, the men seen travelling in the Bravada were described as black males wearing a black t-shirt, a white t-shirt, and a yellow t-shirt. Aside from these three men and the two unidentified female passengers who disembarked soon after the controlled buy, police did not observe any other individuals enter or exit the Bravada. While defendant challenges the accuracy of the officers' surveillance, I find credible the testimony by Officer Zubak and Officer Gehrke that police did not mistake these suspects for similarly-clothed individuals.

Therefore, the two-hour timespan did not detract from officers' objectively reasonable suspicion at 5:22 p.m. that some individual travelling in the maroon Bravada was engaged in drug trafficking. Indeed, less exacting surveillance could still suffice to meet the reasonable suspicion standard. *See Hollins*, 685 F.3d at 706 ("Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop."). *Cf. Formaro*, 152 F.3d at 771 (holding that the more demanding requirement of probable cause can be maintained for more than two weeks following a confirmed drug transaction).

Defendant is free to argue at trial that he was not inside the Bravada at the time of the observed criminal activity. The government must ultimately prove beyond a reasonable doubt that defendant is guilty of the crimes charged in the Indictment. However, defendant's theory does not defeat the relatively low requirement of reasonable suspicion when it comes to analyzing the constitutionality of Officer Koontz's traffic stop. At the time that Officer Koontz arrived on scene, there remained an objectively reasonable and articulable suspicion that some individual inside the vehicle matching the description and license plate number of the vehicle observed at the controlled buy were indeed the three men present at the scene of the buy. I therefore find that the stop was reasonable under the Fourth Amendment.

***B. The Photo Identification***

Defendant next argues that Officer Zubak's use of photographs to identify the person who had delivered cocaine base to the confidential informant on April 19, 2016, was an impermissibly suggestive technique. The argument put forward by defendant in his brief appears to be premised on a misunderstanding that Officer Zubak coaxed an identification out of the CI by presenting him or her with a single photo of defendant and asking if it depicted the person who had delivered the drugs. Unchallenged testimony by Officer Zubak and Special Agent Carter established that the CI was in fact provided with a set of six photographs, each depicting an individual suspected to be involved in drug trafficking in connection to Keylynn Goldsmith, and that the CI identified defendant among this set. Five of the photos depicted black males, and one depicted a black female.

At the hearing, questioning by defense counsel alluded to a new theory that this photographic lineup was impermissibly suggestive due to the fact that some individuals were pictured in Blackhawk County booking photos, while perhaps defendant was pictured in his driver's license identification photo. Officer Zubak's testimony firmly established, however, that he used defendant's booking photo. In any event, defendant

claims that Officer Zubak's lineup procedure violated his Fifth Amendment right to due process. He seeks to suppress the identifying statement made by the confidential informant in response to the photographs.

Photo-lineup identification procedures can violate a defendant's due process rights when they are both suggestive and unreliable. *United States v. Murdock*, 928 F.2d 293, 297 (8th Cir. 1991) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1997)). In assessing a challenged photo lineup, a court must apply a two part test which asks first "whether the challenged confrontation was impermissibly suggestive." (*Id.*). If this prong is satisfied, the court then decides "whether, under the totality of the circumstances, the suggestive procedures created a very substantial likelihood of irreparable misidentification." (*Id.* (internal quotation omitted)); *see also United States v. Omar*, 786 F.3d 1104, 1108 (8th Cir. 2015). Whether there exists a substantial likelihood of misidentification depends on "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Omar*, 786 F.3d at 1108 (citing *Manson*, 432 U.S. at 114).

The second prong of the *Murdock* test makes clear that its goal is to preserve the accuracy of eyewitness identification procedures and to safeguard against prejudicial suggestiveness that "may cause the eyewitness to falsely recollect the face of the person who committed the offense." *United States v. Dobbs*, 449 F.3d 904, 910 (8th Cir. 2006). This concern is not present when an identifying eyewitness is not "asked to recall their impression of a stranger during a short encounter" but rather is asked to confirm that a photograph represents a person with whom they are familiar. (*Id.*). Thus, where a witness is sufficiently acquainted with a suspect, a due process challenge to the identification may be denied regardless of the suggestiveness of the identification procedure. (*Id.* (declining to reach the two-step suggestiveness analysis where the

challenged video identifications were made by three women intimately acquainted with the defendants)); *see also Omar*, 786 F.3d at 1110 (finding that any likelihood of misidentification was negated when one identifying witness had shared a room with the suspect for several days, another had met with the suspect at a restaurant, and a third had lived in the same apartment complex as the suspect).

In this case, the CI used by police for the April 19, 2016, controlled buy told officers that he or she had known defendant for over five years, had been associated with Keylynn Goldsmith, and had received multiple drug deliveries from defendant. Officer Zubak estimated that the CI had made up to twenty drug transactions with defendant prior to the controlled buy on April 19, 2016. He also testified that police had never had reason to "deactivate" the CI for being untruthful. On this basis alone, I find that defendant's Fifth Amendment challenge to the photo lineup used by Officer Zubak cannot stand. This is not a case in which a chance eyewitness was asked to recall the face or voice of a stranger. *See Dobbs*, 449 F.3d at 910. Rather, the CI was a familiar contact of defendant who was apparently trusted as a drug customer.

Moreover, even if I were to reach the *Murdock* analysis and find that Officer Zubak's photo-identification procedure was impermissibly suggestive, the facts of this case would dispel any likelihood of irreparable misidentification. The CI rode inside a vehicle with the person he or she identified as defendant while the controlled buy took place. The CI then made the identification to police immediately after this close-quarters trip, and after being handed six photographs (five of which show black males) without any suggestive statements by the officer. *See Omar*, 786 F.3d at 1108.

Therefore, I find the photo identification made by the CI did not violate defendant's due process rights.

## *III. CONCLUSION*

For the foregoing reasons, I respectfully recommend that defendant's motion to suppress evidence be **DENIED**. Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 20th day of November, 2017.

C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa