# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 17-CR-2051-LRR |
| vs. | **ORDER** |
| DEON MARCELL GOLDSMITH, | |
| Defendant. | |

## I. INTRODUCTION

The matter before the court is Defendant Deon Marcell Goldsmith's Objections (docket no. 139) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 137), which recommends that the court deny Defendant's Motion to Suppress Evidence ("Motion") (docket no. 123).

## II. RELEVANT PROCEDURAL BACKGROUND

On July 18, 2017, a grand jury returned an Indictment (docket no. 8) charging Defendant with one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and two counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)©. *See* Indictment at 2-4. On October 24, 2017, Defendant filed the Motion. On October 31, 2017, the government filed the Resistance (docket no. 131). On November 8, 2017, Judge Williams held a hearing ("Hearing") on the Motion. *See* November 8, 2017 Minute Entry (docket no. 132). Defendant appeared in court with his attorney, Stephen Swift.[1] Assistant United States Attorneys Emily Nydle and Ravi Narayan represented the government. On November 20,

---

[1] On January 12, 2018, Judge Williams appointed Raphael M. Scheetz to replace Mr. Swift as Defendant's attorney after Mr. Swift had been permitted to withdraw due to a conflict of interest. *See* January 12, 2018 Orders (docket nos. 185 and 186).

2017, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On December 1, 2017, Defendant filed the Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[2]

On October 2, 2015, law enforcement officers from the Waterloo Police Department and the Federal Bureau of Investigation arranged, via phone, a controlled purchase of

---

[2] After reviewing the Hearing Transcript (docket no. 148), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-5. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

cocaine base from Keylynn Goldsmith, the subject of an ongoing investigation.  Officers used a confidential informant ("CI 1") to arrange the purchase and conduct the transaction. Prior to the sale, officers conducting surveillance on a location owned by Keylynn Goldsmith observed a maroon Oldsmobile Bravada arrive and make a brief stop before departing.  Officers followed the vehicle to the parking lot of a nearby CVS, which was where CI 1 had arranged for the controlled buy to take place.  CI 1 approached the driver of the Bravada and successfully purchased cocaine base, which CI 1 then delivered to undercover officers.

Officers continued to surveil the Bravada after it left the CVS parking lot.  They observed that the driver was a black male wearing a white T-shirt, and that the passengers were a black male wearing a black T-shirt, a black male wearing a yellow T-shirt and two females.  Officers did not know the identities of these individuals.  During prior controlled buys with Keylynn Goldsmith, different individuals had frequently made the deliveries. Multiple officers participated in the surveillance of the Bravada, rotating positions to avoid detection, but keeping the vehicle in sight at all times.

The Bravada proceeded to a nearby bus station, where the two female passengers exited the vehicle.  It then made brief stops at two other businesses before arriving at Crossroads Mall in Waterloo, Iowa.  Officers observed the three black males exit the Bravada and enter the mall.  Shortly thereafter, two undercover officers entered the Crossroads Mall and observed three black males wearing, respectively, a white T-shirt, a black T-shirt and a yellow T-shirt, inside the mall's U.S. Cellular store.  The individuals eventually left the store, lingered for a time in a hallway inside the mall and then exited to the parking lot.  These three individuals then entered the same maroon Oldsmobile Bravada that had been involved in the controlled buy and drove away from the mall.

At this point, officers requested that a uniformed officer conduct a traffic stop of the Bravada to identify the three individuals.  Officers did not observe a traffic infraction.

The sole purpose of the stop was to ascertain the identities of the occupants. A uniformed officer stopped the vehicle and identified the occupants as Keywann Goldsmith, Antonio King and Defendant. Officers confirmed that the license plate of this vehicle matched that of the car used during the controlled buy approximately two and a half hours earlier. No other evidence was obtained during the traffic stop.

On April 19, 2016, using a different confidential informant ("CI 2"), law enforcement arranged, via phone, and executed another controlled buy from Keylynn Goldsmith. CI 2 was personally familiar with Keylynn Goldsmith, having made multiple prior drug purchases from him. After the buy, CI 2 met with officers to turn over the purchased narcotics and be debriefed. Officers asked CI 2 if Keylynn had delivered the drugs himself, and CI 2 told them that he had not. Officers then showed CI 2 a set of six photographs depicting individuals that officers suspected were connected to Keylynn Goldsmith's drug activities. The photo array included Defendant. CI 2 identified Defendant as the person who had delivered the narcotics to CI 2. In later conversations with officers, CI 2 stated that he or she had known Defendant since approximately 2010 and had seen him intermittently during that time. CI 2 had purchased narcotics from Defendant approximately twenty times since 2010.

## V. ANALYSIS

Defendant's Objections do not specifically delineate the findings of fact or conclusions of law to which Defendant objects. Rather, the Objections largely reiterate the argument that is articulated in the Motion. Such general objections are contrary to the Federal Rules of Criminal Procedure, the Local Rules and the specific instruction of Judge Williams. *See* Report and Recommendation at 12 ("Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections." (citing Fed. R. Crim. P. 59)); *see also* LCrR 59 ("A party in a criminal case who objects to . . . a magistrate judge's report and

recommendation must file specific, written objections . . . .").  The court, however, interprets the Objections as containing three specific objections to the Report and Recommendation.  Defendant objects to: (1) Judge Williams's factual finding that CI 2 had known Defendant since 2010 and had received drug deliveries from him on approximately twenty occasions; (2) Judge Williams's legal conclusion that the October 2, 2015 traffic stop was lawful; and (3) Judge Williams's legal conclusion that CI 2's April 19, 2016 identification of Defendant was not the product of an impermissibly suggestive procedure. The court shall address each objection in turn.

## A.  Factual Objection

Defendant asserts that Judge Williams's "reliance upon [CI 2's] purported past knowledge [of Defendant in upholding the identification] was erroneous."  Objections at 3.  He argues that Judge Williams's finding that CI 2 previously knew Defendant "completely ignores the evidence that Defendant offered on this very issue."  *Id*. at 2-3. Upon review of the Hearing Transcript, the court finds that the testimony offered by Defendant's witness does not contradict the testimony from law enforcement regarding CI 2's reported history with Defendant.  Michelle Goldsmith, Defendant's mother, testified that Defendant lived in Chicago in 2010, was on probation in Illinois from 2010 to 2011 and was incarcerated in Illinois for nearly two years beginning in 2011.  Hearing Transcript at 28.  She testified that, upon his release, he returned to Chicago and lived there until moving to Waterloo in 2014.  *Id*. at 28-29.  Ms. Goldsmith's testimony on these matters does nothing to suggest that CI 2 has not known Defendant since 2010.  Ms. Goldsmith testified that Defendant did not reside in Waterloo until 2014, but stated that he had made visits there prior to relocating because he was romantically involved with a woman there.  *Id*. at 29.  Ms. Goldsmith did not know how frequently these visits occurred or for how long they had gone on.  *Id*.  Ms. Goldsmith's testimony offers no reason to disbelieve law enforcement's report that CI 2 had received drug deliveries from Defendant

on approximately twenty intermittent occasions prior to April 19, 2016. Therefore, the court shall overrule this factual objection.

## B. October 2, 2015 Traffic Stop

The Fourth Amendment to the United States Constitution protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment permits investigative traffic stops when law enforcement has reasonable suspicion of criminal activity." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016) (citing *Navarette v. California*, 572 U.S.    ,    , 134 S. Ct. 1683, 1687 (2014)). "For an investigative *Terry*-type seizure to be constitutional under the Fourth Amendment, an officer must be aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "A reviewing court must look at the totality of the circumstances, allowing 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In this case, CI 1 had experience with the distribution patterns of the drug organization that officers were investigating. Officers observed the Bravada leave a location that was owned by the target drug seller and go to the meeting place where CI 1 had arranged for the controlled drug buy to take place. These observations alone would have justified an investigatory stop. *See United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012) (upholding an investigatory stop based on observing a vehicle deliver a suspected drug trafficker to a controlled drug transaction in accordance with an established pattern). The officers, however, gathered further information to justify the

stop. They watched CI 1 exchange money for cocaine base with the driver of the Bravada. Officers maintained surveillance on the vehicle from the time of the sale until the time of the stop and verified that it was the same vehicle via the license plate. This evidence firmly supports a reasonable, articulable suspicion that criminal activity had taken place.

Defendant argues in his Objections that, "there is no established evidence that the individual involved in the controlled buy was still in that vehicle when it was stopped at approximately 5:22 p.m." Objections at 2. Initially, the court notes that "established evidence" is not the operative legal standard. Rather, the Fourth Amendment requires that the officers have had reasonable and articulable suspicion. Defendant's suggestion that the occupants of the vehicle at the time of the stop might not have been the same individuals that were in the car at the time of the drug sale does not undermine the validity of the stop. Although officers briefly lost sight of the vehicle's occupants when they entered the Crossroads Mall, officers quickly located three individuals matching the same description inside the mall. Defendant argues that, in the short time between their entering the U.S. Cellular store and officers reestablishing contact, the individuals who were in the Bravada during the drug transaction could have exited the store through another door and absconded. The possibility, however, that simultaneously and by coincidence three different individuals, also black males respectively wearing black, white and yellow T-shirts, were already inside the U.S. Cellular store, and that those individuals got into the same vehicle that had been involved in the drug transaction, is so remote as to be unreasonable. The court finds that, in light of the totality of the circumstances, the officers had reasonable and articulable suspicion to conduct a traffic stop. Therefore, the court shall overrule this objection.

### C. April 19, 2016 Identification

"A [witness's] identification of the defendant is admissible unless it is based upon a pretrial confrontation between the witness and the suspect that is both impermissibly

suggestive and unreliable." *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998) (emphasis and quotation omitted). "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Smith*, 602 F.2d 834, 837 (8th Cir. 1979) (alteration in original) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

There is little concern about undue suggestiveness in this case. "[A] display is not impermissibly suggestive where the agent does not direct the witness'[s] attention to any particular photo, and the display does not contain several photos or peculiar photos of the defendant alone." *United States v. Mears*, 614 F.2d 1175, 1177 (8th Cir. 1980). The officers in this case did not direct CI 2's attention to Defendant's photograph. In fact, the officers first selected a photograph of Keylynn Goldsmith, the target of their investigation, and asked CI 2 if that was the person who had delivered the drugs. CI 2, who knew Keylynn Goldsmith personally, stated that it was not. Officers then handed CI 2 a stack of photographs and asked whether any of the photographs depicted the person who had delivered the drugs. At that point, CI 2 selected Defendant's photo. Nothing about the identification procedure indicates that law enforcement did anything to call CI 2's attention to Defendant's photograph.

Even if the procedure were unduly suggestive, however, CI 2's prior familiarity with Defendant would allay any concerns about the admissibility of CI 2's identification. "[W]hen someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect . . . concerns [about the prejudicial effect of undue suggestiveness] are absent." *United States v. Omar*, 786 F.3d 1104, 1109-10 (8th Cir. 2015) (second and third alterations in original) (quoting *United States v. Dobbs*, 449 F.3d 904, 910 (8th Cir.2006)). "When an eyewitness is shown an improper lineup or

photo array, undue suggestiveness may be prejudicial because the suggestiveness may cause the eyewitness [not familiar with a subject] to falsely recollect the face of the person who committed the offense." *Dobbs*, 449 F.3d at 910. A witness who is well-acquainted with the subject, however, is "a valuable aid to the jury." *Id*.

Having met Defendant approximately twenty times over the prior six years, CI 2 was unlikely to be influenced by the manner of the identification procedure. There is nothing in the record to suggest that CI 2 was falsely recollecting the face of the person that he or she had purchased cocaine base from only minutes earlier. Rather, the testimony suggests that CI 2 made a controlled purchase from a person that he or she was reliably familiar with, and then picked that person's photograph out of a stack of photographs of persons of interest to the investigation. CI 2 had been reliable in the past and officers had never had any reason to discontinue using CI 2 due to untruthfulness. The court therefore finds that CI 2's identification of Defendant was not the result of undue suggestiveness, is reliable and may be admitted into evidence. Therefore, the court shall overrule this objection.

## VI. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)    The Objections (docket no. 139) are **OVERRULED**;

(2)    The Report and Recommendation (docket no. 137) is **ADOPTED**; and

(3)    The Motion to Suppress (docket no. 123) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 21st day of March, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA